815 P.2d 396

STATE of Arizona, ex rel. Stephen D. NEELY, Petitioner,

v.

Hon. William N. SHERRILL, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF PIMA, Respondent.

Lewis A. SEGELSON, Real Party in Interest.

STATE of Arizona, ex rel. Stephen D. NEELY, Petitioner,

v.

Hon. Richard NICHOLS, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF PIMA, Respondent,

Robert GANDARA, Real Party in Interest.

Nos. CV–90–0471–SA, CV–90–0516–PR and CV–90–0491–SA.

Supreme Court of Arizona, En Banc.

July 16, 1991.

Stephen D. Neely, Pima County Atty. by Paul G. Lauritzen, Deputy County Atty., Tucson, for petitioner.

Susan A. Kettlewell, Pima County Public Defender by Peter J. Eckerstrom, Asst. Public Defender, Tucson, for real party in interest Segelson.

Law Offices of Jeffrey G. Buchella by Jeffrey G. Buchella, Tucson, for real party in interest Gandara.

## OPINION

CORCORAN, Justice

Through these consolidated special action requests, the State of Arizona asks this court to resolve the following issue of statewide importance:

> When a defendant absconds before or during a criminal trial, must the prosecution attempt to prove a prior conviction allegation to the trial jury after it returns its verdict on the underlying substantive charge, or may it attempt to prove the allegation to a different jury after the defendant's capture?

We accept jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and rule 8, Arizona Rules of Procedure for Special Actions. We grant the State's requested relief because we conclude that neither the Arizona Rules of Criminal Procedure, nor Arizona's sentencing statutes, nor the Arizona or federal constitutions prohibit the use of a second jury under these circumstances.

### Facts

1. *Lewis A. Segelson*

Lewis A. Segelson was indicted for armed robbery. The State later alleged 6 prior felony convictions for sentence enhancement purposes. Segelson pleaded guilty to attempted armed robbery, but the trial court deferred acceptance of the plea agreement until the time set for entry of judgment and sentencing.

At sentencing, the court learned that Segelson had absconded, and the State successfully moved to withdraw from the plea agreement. The court directed that an order issue for Segelson's arrest, set a date for trial *in absentia,* and referred the case to the court commissioner for bond forfeiture proceedings.

The jury trial was held two months later, and Segelson was convicted of armed robbery. While the jury was deliberating, however, the State sought permission to prove the allegation of prior convictions to

a second jury after Segelson was apprehended. The prosecution argued that Segelson's absence deprived it of non-testimonial evidence (in the form of a contemporaneous fingerprint exemplar) essential to establishing that he was the person who had been previously convicted. Over defense counsel's objection, the trial court granted the State's motion and discharged the jury after it returned its verdict on the robbery charge.

After Segelson was apprehended, the court reversed its ruling and refused to allow the State to prove the allegation of prior convictions to a second jury. The trial court stayed Segelson's sentencing to permit the State to seek special action relief in the court of appeals. When that court declined jurisdiction, the State petitioned this court for special action relief,[1] and we stayed all proceedings in the trial court until further order of this court.

### 2. *Robert Gandara*

Robert Gandara was indicted on one felony count of unlawful possession of drug paraphernalia. Attached to the indictment was an allegation that he previously had been convicted of another felony, criminal trespass. His trial began on May 24, 1990, with the resolution of pending motions and jury selection. The next day, however, Gandara failed to appear. The trial court found that Gandara had voluntarily absented himself, and it issued a bench warrant for his arrest. The trial then proceeded in his absence, and the jury convicted Gandara of the possession charge.

Before the trial judge discharged the jury, the State moved for permission to try the prior conviction allegation to another jury after Gandara was apprehended. As in Segelson's case, the State argued that Gandara's absence prevented it from proving that he was the person who previously had been convicted. The trial court granted the motion, and the State did not present any evidence concerning the prior conviction to the first jury.

Gandara was apprehended approximately 4 months later, and the court set the trial on the prior conviction allegation for October 26, 1990. At the time of trial, Gandara's counsel moved to dismiss the allegation, asserting that the second trial violated the rules of criminal procedure, the applicable sentencing statutes, and double jeopardy principles. The trial judge denied the motion and the second jury proceeded to find that Gandara previously had been convicted of criminal trespass. The court scheduled sentencing for November 14, 1990.

On November 14, however, believing that trying the prior conviction allegation to a second jury had placed Gandara in double jeopardy, the trial court vacated the second jury's verdict on the prior conviction and dismissed the allegation. The court then continued sentencing until November 27, 1990, to permit the State to seek special action relief from the Arizona Court of Appeals. The court of appeals declined jurisdiction, and the State petitioned this court for special action relief. On December 20, 1990, we stayed all proceedings until further order of this court.

### *Discussion*

Although the facts of Segelson's and Gandara's cases differ with regard to when each absconded and whether the prior con-

---

1. The State also filed a petition for review addressing the same issue presented in its special action petition. We granted the petition for review and consolidated it with the special action petition.

Although we have accepted jurisdiction over these cases as appropriate special action requests, we emphasize that a petition for review normally is the proper and most efficient method to seek this court's review of the court of appeals' grant or denial of special action relief. *See* rule 8(b), Arizona Rules of Procedure for Special Actions. A party may file a new special action petition in this court *only* when "exceptional circumstances" make a petition for review an inadequate alternative. Rule 8(b).

Although rule 8 currently provides no guidance on the proper procedure for requesting a stay of lower court proceedings in conjunction with a petition for review, we believe that the appropriate method for such a request would be to submit a copy of the petition for review that has been filed in the court of appeals to the Clerk of the Supreme Court when the petition for stay is filed.

**472**

viction allegations were actually tried to a separate jury, the same issue is dispositive in both cases: When a defendant absconds, must the State try prior conviction allegations to the same jury that determines the underlying substantive charge? Thus, although we may occasionally address Gandara and Segelson separately in this opinion, the commonality of the issue presented in their cases transcends any factual variations between the two, and all issues discussed are equally applicable to both.

In *State v. Crumley*, 128 Ariz. 302, 625 P.2d 891 (1981), we addressed the propriety of trying a prior conviction allegation to a jury that had been inadvertently discharged and later reconvened. In concluding that the trial court had improperly allowed the discharged jurors to determine the prior conviction allegation, we limited our decision to the narrow factual situation of that case. We expressly noted that we did not decide the broader issue of "whether under the proper conditions trial of the allegation of a prior conviction may be had before a different jury than the one which returned the verdict." 128 Ariz. at 306, 625 P.2d at 895. In this case, however, we must decide that precise issue.

In support of its position that a prior conviction allegation may be presented to a jury different from the one that decides the substantive charge, the State argues that, although A.R.S. § 13–604(K) and rule 19.-1(b)(2) of the Arizona Rules of Criminal Procedure suggest that the same jury should hear both issues, neither the rule nor the statute *requires* this procedure. The State also argues that a defendant is not placed in double jeopardy simply because the prior conviction allegation, which the State asserts is distinct from the substantive offense charged in the indictment, is heard by a different jury.

In contrast, defendants argue that rule 19.1(b)(2) implies that one jury must decide both the substantive charge and the allegation of the prior offense. They assert that

**2.** We note that the use of a jury to determine a prior conviction allegation is not *constitutionally* mandated, but is required only by statute in Arizona. In other jurisdictions, the judge may

any other interpretation would run counter to a defendant's "valued right" under the double jeopardy clause to have his or her trial completed by a particular tribunal and would violate notions of "fundamental fairness."

#### A. A.R.S. § 13–604(K) and rule 19.-1(b)(2)

■ Pursuant to § 13–604(K), a trial judge may enhance a defendant's sentence by use of a prior conviction if (1) the prior is charged in the indictment or information, and (2) the defendant admits the prior or it is found by the trier of fact. Rule 19.-1(b)(2) establishes the procedure for trying the prior conviction allegation: "If the verdict is guilty, the issue of the prior conviction shall then be tried, unless the defendant has admitted the prior conviction." [2]

In *State v. Johnson*, we recognized that our previous decisions supported a conclusion that § 13–604(K) and rule 19.1(b)(2) "provide that the allegation of prior conviction be tried by the same jury which tried the substantive or current charge." 155 Ariz. 23, 26, 745 P.2d 81, 84 (1987), *citing State v. Gilbert*, 119 Ariz. 384, 581 P.2d 229 (1978); *Crumley*, 128 Ariz. 302, 625 P.2d 891. Thus, defendants correctly conclude that both the statute and rule envision the use of one jury. This practice, however, is not without exception, and precedent exists for allowing a second jury to try a prior conviction allegation. *See, e.g., Johnson*, 155 Ariz. at 26–27, 745 P.2d at 84–85 (mistrial after hung jury on prior conviction); *State v. Riley*, 145 Ariz. 421, 421–22, 701 P.2d 1229, 1229–30 (App.1985) (finding of prior conviction reversed on appeal because trial court erred in accepting defendant's admission of the prior).

A common element distinguishes those cases in which a second jury is allowed from those in which it is prohibited—the State's responsibility for necessitating the second jury. If the State is not at fault in creating the need for the new jury, A.R.S.

determine this issue. *See, e.g., Spencer v. Texas*, 385 U.S. 554, 560, 566–69, 87 S.Ct. 648, 651–52, 655–56, 17 L.Ed.2d 606 (1967).

§ 13–604(K) and rule 19.1(b)(2) do not prohibit the use of a second jury to try the prior conviction allegation. Accordingly, in both *Johnson* and *Riley,* because the State did not create the need for the second jury, impaneling the new jury was proper. *But cf. Crumley,* 128 Ariz. at 305, 625 P.2d at 894 (trial jury was discharged when the prior conviction issue was "overlooked" and second jury therefore prohibited); *State v. Corrales,* 26 Ariz.App. 344, 345, 548 P.2d 437, 438 (1976) (State alleged priors at first trial "but offered no proof;" second jury therefore prohibited).

Similarly, in both *Segelson* and *Gandara,* the State was blameless. It sought to prove the priors to a second jury because of the defendants' unlawful flight before (Segelson) and during (Gandara) trial. Although the State can prove a prior conviction without the defendant's presence, his or her presence for identification provides perhaps the best evidence of whether the defendant was in fact the person convicted in the prior case.[3] The State should not be deprived of the best evidence for proving the prior conviction by the defendant's unlawful flight. We find nothing in either the statute or rule that indicates an intent to preclude a trial of the allegation of prior conviction to a second jury when the defendant absconds. We therefore hold that, under A.R.S. § 13–604(K) and rule 19.-1(b)(2), if the defendant absconds and the trial court proceeds with the trial *in absentia,* the court may continue the trial of the allegations of priors and permit the State to prove the allegations to a second jury when the defendant becomes available.

### B. Double Jeopardy

▮ Because we conclude that neither the statute nor the rule is contravened when a different jury hears the prior conviction allegation, we must now address defendants' contention that our interpretation of rule 19.1(b)(2) violates double jeopardy concepts. Gandara successfully ar-

gued at his sentencing that, by allowing a different jury to hear the prior conviction allegation, the trial court violated his "valued right to have his trial completed by a particular tribunal." *See Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). We conclude, however, that the trial court in Gandara's case improperly vacated the second jury's finding on the prior conviction allegation, and that the court in Segelson's case erred in preventing the State from presenting the prior convictions allegation to a different jury.

Initially, we note that the United States Supreme Court qualified the "valued right" upon which defendants rely in the very case in which the court first identified it. In *Wade,* the Court stated that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." 336 U.S. at 689, 69 S.Ct. at 837; *see also Arizona v. Washington,* 434 U.S. 497, 503 n. 11, 98 S.Ct. 824, 829 n. 11, 54 L.Ed.2d 717 (1978). Thus, even were we to hold that failure to try both the substantive charge and the prior conviction allegation to the same jury was inconsistent with the right described in *Wade,* we do not believe that a defendant legitimately could invoke that right in a case in which he absconded before or during trial. Certainly the "public's interest in fair trials designed to end in just judgments" outweighs a defendant's disingenuous claim that he or she has been deprived of the right to have one jury determine both the underlying charge and the prior conviction allegation when the defendant has created or contributed to the situation requiring the use of two juries.

We reject defendants' argument, however, because of a more fundamental flaw in their analysis. Although we agree that Arizona criminal defendants are guaranteed protection from double jeopardy in sentence enhancement proceedings, we do not believe that those principles are impli-

---

**3.** When the State alleges a prior conviction, it must prove: "(1) that the defendant in the present case and the one convicted in the prior case are the same individual, and (2) that there

was in fact a prior conviction." *State v. Nash,* 143 Ariz. 392, 403, 694 P.2d 222, 233 (1985), *citing State v. Pennye,* 102 Ariz. 207, 427 P.2d 525 (1967).

cated simply because the trial of the prior conviction allegation is set to a jury different from the one that has just convicted the defendant on the current felony charge.

■ The double jeopardy clause of the fifth amendment protects a defendant against multiple prosecution for the same offense, and applies to the states through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986). Article 2, § 10 of the Arizona Constitution affords similar protection. The double jeopardy clause provides three distinct guarantees to a criminal defendant: (1) freedom from reprosecution following acquittal, (2) freedom from reprosecution following conviction, and (3) freedom from multiple punishments for the same offense. *Grady v. Corbin*, 495 U.S. 508, ——, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990), *citing North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). None of these three guarantees would have been violated by impaneling the second juries in these cases.

The State is not attempting to take two bites of the apple by trying twice to prove defendants' prior convictions. In each case, it simply requests the proceeding to which it is entitled—*a* trial in which it would have *one* chance to prove the prior convictions. The only questions presented were when those trials would occur and whether they would be before the same or a second jury.

The United States Supreme Court addressed a similar situation in *Graham v. West Virginia* and unanimously held that the double jeopardy clause does not prohibit trying the issue of prior convictions to a separate jury at a later time. 224 U.S. 616, 625, 32 S.Ct. 583, 586, 56 L.Ed. 917 (1912). In *Graham*, the defendant already was serving a sentence for grand larceny when the prosecuting attorney presented an information alleging that he had prior convictions warranting an enhanced sentence under West Virginia law. The prosecutor brought the information in a different county from the one in which Graham had

been convicted for the subsequent crime. A jury was impaneled, and it returned a verdict identifying defendant as the person previously convicted. Graham appealed that determination, claiming, *inter alia*, that he was placed in double jeopardy when the prosecution brought the allegation of prior convictions to a separate jury after he had been convicted of the substantive offense. The Supreme Court disagreed, emphasizing that the enhancement proceeding was not an "inquiry ... into the commission of an offense." 224 U.S. at 627, 32 S.Ct. at 587. Rather, "the question was simply whether the party had been *convicted* of an offense." *Id.* at 628, 32 S.Ct. at 587 (emphasis added). The Court noted that the State could allege the prior conviction in the indictment for a finding by the original jury on the allegation. It concluded, however, that the State was not *required* to allege the prior in the indictment, but could do so at a later time. *Id.* at 625, 32 S.Ct. at 586. The Court described the practice of trying the prior conviction allegation to the same jury that determines guilt or innocence on the underlying substantive charge as follows:

> It may be convenient practice, but it is not obligatory. This conclusion necessarily follows from the distinct nature of the issue and from the fact, so frequently stated, that *it does not relate to the commission of the offense, but goes to the punishment only, and therefore it may be subsequently decided.*

*Id.* at 629, 32 S.Ct. at 588 (emphasis added).

*Graham* was not an aberration from the Supreme Court's analysis of this issue. Fifty years later, in *Oyler v. Boles*, the Court again emphasized:

> Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is "essentially independent" of the determination of guilt on the underlying substantive offense. *Chandler v. Fretag*, 348 U.S. 3, 8, 75 S.Ct. 1, 4 [99 L.Ed. 4] (1954). Thus, although the habitual criminal issue may be combined with the trial of the felony charge, "it is a distinct issue, and it may appropriately be the subject of separate determination."

368 U.S. 448, 452, 82 S.Ct. 501, 503–04, 7 L.Ed.2d 446 (1962), *citing Graham*, 224 U.S. at 625, 32 S.Ct. at 586.[4] And in *Spencer v. Texas*, 385 U.S. 554, 566, 87 S.Ct. 648, 655, 17 L.Ed.2d 606 (1967), after stating that "[t]olerance for a spectrum of state procedures dealing with [this] common problem of law enforcement is especially appropriate," the Court noted that, "[i]n some States such a [sentence enhancement] proceeding can be instituted even after conviction on the new substantive offense."[5]

Thus, as the Arizona Court of Appeals has succinctly concluded, "[t]rial of the prior conviction issue is for the purpose of determining a defendant's status as a habitual offender and it is not part of the trial of the principal offense." *State v. Jacobson*, 18 Ariz.App. 538, 540, 504 P.2d 69, 71 (1972), *vacated on other grounds*, 110 Ariz. 70, 515 P.2d 27 (1973). The first juries impaneled in these cases convicted defendants of the principal offenses charged. Consequently, their "valued right to have [their] trial completed by a particular tribunal," *see Wade*, 336 U.S. at 689, 69 S.Ct. at 837, is not at issue. That right was satisfied when the juries found them guilty of the substantive charges. At no time were they "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* Ariz. Const. art. 2, § 10. Accordingly, we find no double jeopardy violation.

█ Nor do we believe that the use of two juries is fundamentally unfair. In *State v. Corrales*, 26 Ariz.App. at 345, 548 P.2d at 438, the Arizona Court of Appeals concluded that, when the State failed to

offer proof of the defendant's prior convictions at a first trial, allowing the State to prove the priors at a subsequent trial was a violation of fundamental fairness because it penalized the defendant for seeking a new trial. Defendants are not similarly "penalized" in this case. *Corrales* involved multiple opportunities for the State to prove prior convictions. Segelson's and Gandara's cases concern only one attempt to prove the prior conviction allegations. Allowing the State that one attempt is not fundamentally unfair to defendants.

### *Disposition*

#### 1. *Segelson*

We reverse the trial court's order prohibiting the State from trying the allegation of prior convictions to a separate jury, and we remand this case to the trial court for a jury determination on the prior convictions for purposes of sentence enhancement.

#### 2. *Gandara*

We reverse the trial court's order vacating the jury's verdict on the prior conviction allegation, and we remand this case to the trial court to sentence defendant as a repeat offender pursuant to A.R.S. § 13–604.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

---

**4.** In *Sherman v. United States*, 241 F.2d 329, 335 (9th Cir.1957), the Ninth Circuit provided a similar description of sentence enhancement:

The information required to be filed does not charge another crime or offense, either felony or misdemeanor. The defendant has in each instance been previously charged with and convicted of the prior offense or offenses referred to in the information. There is no attempt to retry him on them, he is not arraigned and required to enter his plea. The purpose of the information after trial and conviction is merely to advise the Court as to whether or not defendant is a second or third offender. *There is no issue of criminality involved, only the matter of identity.* If he denies that[,] he is entitled to a jury trial on that sole issue. The matter of the former offense

is not relitigated. The allegations of the information, and proof on trial of question of identity, goes solely to the question of punishment.

(Emphasis added.)

**5.** For example, the West Virginia statute at issue in *Graham* still provides that, even after the defendant has been incarcerated, a second jury may be impaneled to determine the existence of a previous conviction. *See* W.Va.Code § 62–8–4 (1989); *see also State v. Gonzales*, 84 N.M. 275, 502 P.2d 300 (App.1972); *State v. Custer*, 240 Or. 350, 401 P.2d 402 (1965) (upholding similar sentence enhancement procedures against double jeopardy, speedy trial, and cruel and unusual punishment claims).