33 P.3d 1177

The STATE of Arizona, Appellee,

v.

Jesus Leopoldo FLORES, Appellant.

No. 2 CA–CR 00–0501.

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 1, 2001.

Janet Napolitano, Arizona Attorney General by Randall M. Howe and Cynthia A. Ryan, Tucson, for Appellee.

Harriette P. Levitt, Tucson, for Appellant.

*OPINION*

ESPINOSA, Chief Judge.

¶ 1 Appellant Jesus Flores was on probation from an earlier felony conviction when a Department of Public Safety (DPS) officer found a gun and ammunition in the glove compartment of the car Flores was driving. A jury found him guilty of possessing a deadly weapon as a prohibited possessor. Because he had committed the offense while on probation, the trial court sentenced him to a day-for-day, 4.5–year term of imprisonment pursuant to A.R.S. § 13–604.02(A). Flores contends on appeal that the trial court erred in admitting into evidence statements he made to a law enforcement officer, claiming he was improperly interrogated without having been advised of his *Miranda*[1] rights. Additionally, he contends that his sentence was unlawfully enhanced because the fact of his probationary status had not been determined by the jury as required by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We affirm.

**Admissibility of Statements**

¶ 2 Flores first argues that he "was questioned in violation of Miranda" and that

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the trial court erred in admitting his statements after a voluntariness hearing on the first day of trial. Because the determination of voluntariness is "highly fact-intensive, a court's finding will not be disturbed absent clear and manifest error." *State v. Trostle*, 191 Ariz. 4, 14, 951 P.2d 869, 879 (1997); *State v. Ross*, 180 Ariz. 598, 886 P.2d 1354 (1994). In crafting his argument, Flores has been vague about which of his various statements he believes comprises the "confession" he claims to have made when he "was immediately taken into custody and questioned regarding criminal activity without any advisement of his constitutional rights." But the evidence, viewed in the light most favorable to upholding the trial court's ruling, *State v. Weinstein*, 190 Ariz. 306, 947 P.2d 880 (App.1997), does not show that the trial court erred.

¶ 3 In May 1998, DPS Officer Beck stopped a 1994 Camaro Flores was driving on Interstate Highway 10 in Pinal County after Beck learned from a dispatcher that the car's insurance had been canceled. Beck first asked Flores for his driver's license, which he could not produce. Beck then asked for the vehicle registration and proof of insurance. As Flores reached to open the glove compartment, he told the officer, "I want to warn you, there is a pistol and ammunition in the glove box." Beck removed the gun, returned to his vehicle, radioed his dispatcher, and thereafter was informed that there was an outstanding felony probation warrant for Flores's arrest and that his driver's license had been suspended. Beck then handcuffed Flores and placed him in the patrol car. At the voluntariness hearing, Beck testified that as soon as Flores got into the car, he had asked Flores "if he knew his rights. He stated he did. He had been through this before. I asked him if he knew he had the right to remain silent and [if] he knew he had the right to have [an] attorney present. He said he knew them all." Beck further testified that "at some point" he had asked Flores if he had been convicted of a felony, and Flores had confirmed "that he had been and that is what he was on probation for."

¶ 4 To assess whether a defendant's incriminating statements were made voluntarily and not in violation of the defendant's Fifth Amendment right against self-incrimination, the trial court evaluates the totality of the surrounding circumstances. *Ross; see also Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). *Miranda* warnings are not required unless the defendant is in custody. *State v. Wilson*, 113 Ariz. 145, 548 P.2d 23 (1976). Here, despite some ambiguity in Beck's testimony and the state's argument that Flores was merely under investigative detention, we proceed on the assumption that Flores was already in custody when Beck asked him if he had been convicted of a prior felony. The appropriate inquiries then become whether Flores was properly advised of his rights and whether his will was overborne by impermissible police conduct or coercive pressures during a custodial interrogation. *State v. Amaya–Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990).

¶ 5 Although, as the state urges, Beck may only have been attempting to verify that there was indeed an outstanding arrest warrant for Flores when he asked him about his prior conviction, *see State v. Jeney*, 163 Ariz. 293, 787 P.2d 1089 (App.1989) (booking information not subject to *Miranda*), nonetheless, in this particular context the information was directly and patently incriminating because it comprises an element of the charged offense. *See* A.R.S. §§ 13–3101(A)(6)(b), 13–3102(A)(4). The state further argues, however, that because Beck "ensured that Appellant was aware of his *Miranda* rights," and because Flores had "prior experience with the judicial system" and stated he " 'knew them all,' " no violation of *Miranda* occurred. The state cites *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166, 177 (1989), *quoting Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182, 193 (1974), for the proposition that "the prophylactic *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.' " But the state overlooks that that language was severely undercut in *Dickerson* wherein the Supreme Court minimized it and came to a near opposite conclusion,

holding that the *Miranda* warnings are constitutionally required. In any event, we need not resolve the issue whether a less than complete advisement of rights is sufficient for a knowledgeable suspect.

¶ 6 The two essential elements of Flores's offense had already been established before he was taken into custody and without benefit of his incriminating statement: he had demonstrated his knowing possession of the gun by telling Beck about it before opening the glove compartment, and Beck had learned of his felony conviction from the dispatcher. By responding affirmatively to Beck's question, Flores simply confirmed information that was already a matter of public record and easily verifiable even without his cooperation. Thus, regardless of the adequacy of *Miranda* warnings administered, Flores's confirmation that he had previously been convicted of a felony was not necessary for his conviction and its admission at trial was harmless. *See State v. Rodriguez,* 186 Ariz. 240, 921 P.2d 643 (1996) (despite violation of Fifth and Fourteenth Amendment rights, conviction may still stand if error found harmless).

¶ 7 Moreover, although Flores furnished some additional information during the drive after assuring Beck he was aware of his *Miranda* rights, none of those statements constituted a confession in the ordinary sense. The details he provided were either nonessential (his having driven the car on other occasions when the gun was in the car) or available from other sources, including public records (his felony conviction and status as a prohibited possessor), again making any conceivable violation of his rights harmless under the circumstances. *See State v. Sharp,* 193 Ariz. 414, 973 P.2d 1171 (1999) (any error in admitting defendant's statement harmless in view of overwhelming evidence of guilt and independent evidence of inculpatory statement's truth). In short, Flores has no legitimate claim that his statements were coerced or his privilege against self-incrimination infringed, and the trial court did not err in admitting the statements at trial.

### Apprendi Claim

¶ 8 Flores bases his second claim of error on the Supreme Court's decision in *Apprendi,* arguing that his sentence was illegally enhanced because the fact that he was on probation when he committed this offense "exposed [him] to a greater punishment than that authorized by the jury's guilty verdict" and should, therefore, have been found by the jury. That claim fails for two reasons. First, Flores was sentenced pursuant to A.R.S. § 13–604.02(A), which required that he be "sentenced to ... not less than the presumptive sentence authorized under this chapter," and that the sentence be served in its entirety. Pursuant to A.R.S. § 13–604(A), the maximum sentence is six years and the presumptive term for a class four felony committed with one historical prior felony conviction is 4.5 years, the sentence imposed here. Because Flores's probationary status thus did not increase the penalty for his crime "beyond the prescribed statutory maximum," *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455, but merely raised the crime's minimum term, the holding of *Apprendi* is inapplicable to him. Second, Flores stipulated at trial that, at the time of his offense, he had been on probation and was not permitted to possess a firearm. The court read the stipulation to the jurors and instructed them that the stipulated facts were part of the evidence in the case. In finding Flores guilty as a prohibited possessor of the handgun, the jury implicitly but necessarily made the finding that he had been on felony probation at the time. His argument is therefore meritless.

¶ 9 For the foregoing reasons, the judgment of conviction and sentence are affirmed.

HOWARD, P.J., and DRUKE, J., concurring.